UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| LAWRENCE CARMONA, individually and on behalf of himself and all others similarly situated, | ) ) ) | CASE NO. 3:22-cv-02127-JZ |
| | ) | JUDGE JACK ZOUHARY |
| Plaintiff, | ) ) | MAGISTRATE JUDGE DARRELL A. CLAY |
| vs. | ) ) | |
| GRAMMER, INC., et al., | ) ) ) | **JOINT MOTION FOR APPROVAL OF SETTLEMENT AND STIPULATION OF DISMISSAL WITH** |
| Defendants. | ) | **PREJUDICE** |

## I.     **INTRODUCTION**

Representative Plaintiff Lawrence Carmona and Defendants Grammer, Inc. and Toledo
Molding & Die, LLC, ("Defendants" or "Grammer") (collectively "Parties") respectfully move
this Court to approve the proposed FLSA opt-in settlement reached by the Parties and
memorialized in the Joint Stipulation of Settlement and Release ("Agreement") attached as Exhibit
A.

The proposed settlement will resolve bona fide disputes involving overtime compensation
claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as well as the
Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. 4111.03. Specifically, Plaintiff
asserted that Defendants unlawfully failed to include all renumeration earned by Plaintiff and other
similarly situated employees in their regular rates of pay for purposes of calculating their overtime
compensation, in violation of the FLSA and the OMFWSA. Defendants expressly deny that they
violated the FLSA or the OMFWSA.

If approved by the Court, the Agreement will provide for the issuance of notice to all Eligible Settlement Participants[1] within twenty (20) business days of approval by this Court. Eligible Settlement Participants will have forty-five (45) days to join the Settlement by executing and returning Consent and Release Forms.  Because the proposed Settlement is an FLSA *opt-in* settlement, as opposed to a Rule 23 settlement, no fairness hearing is required or requested by the Parties.[2]

The Parties respectfully submit that the proposed Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA.  The Agreement was achieved during arms-length negotiations among the Parties, conducted by experienced counsel, and reached on September 25, 2023.  If approved by the Court, the Agreement will make settlement payments available to Plaintiff and the Eligible Settlement Participants who elect to participate in the Settlement.

The settlement documents submitted for approval or entry by the Court consist of the following:

Exhibit A:     Joint Stipulation of Settlement and Release

Exhibit B-1:   Notice of Settlement of Lawsuit

Exhibit B-2:   Consent and Release Form entitled Consent to Opt-Into Lawsuit, Release, and Dismiss Claims

Exhibit C:     Order of Dismissal and Approving Settlement

---

[1] All defined terms not explicitly defined herein shall have the meaning ascribed to them in the Agreement.

[2] *See Moore v. Ackerman Inv. Co*., C 07-3058-MWB, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b)."); *McLean v. HSM Elec. Prot. Services, Inc.*, 607CV1680ORL28DAB, 2008 WL 4642270 (M.D. Fla. Oct. 8, 2008) (same); *Barnes v. Benzerenterprises, Inc.*, 607CV1754-ORL-22DAB, 2008 WL 4059839, (M.D. Fla. Aug. 27, 2008) ("the Court determines that there is no need for a fairness hearing").

Exhibit D:      Declaration of Counsel Chastity L. Christy

The following sections explain the nature of the Action, the negotiations, the principal terms of the Agreement, and the propriety of approving the Agreement and its proposed distributions of settlement proceeds.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Action

On November 23, 2022, this "collective action" and "class action" was instituted by Representative Plaintiff Lawrence Carmona as a result of Defendants' alleged failure to include all renumeration earned by Plaintiff and other similarly situated employees in their regular rates of pay for purposes of calculating their overtime compensation, in violation of the FLSA and the OMFWSA.  (Doc. 1.)

The Parties were scheduled to attend a mediation with Magistrate Judge Darrell A. Clay on September 14, 2023.   (Ex. D, Christy Declaration, ¶ 21.)  The mediation was cancelled as the Parties had agreed to the monetary aspect of the settlement on September 11, 2023, but were still in the process of negotiating some non-monetary terms.  (*Id*.)

### B.    Negotiation of the Agreement

Between January 2023 and September 2023, the Parties engaged in an informal yet comprehensive exchange of information regarding Plaintiff's claims and Defendants' defenses to such claims.  (*Id*. at ¶ 19.)  This included the calculations of Plaintiff's and the Eligible Settlement Participants' alleged overtime damages.  (*Id.*)

Between December 2022 and the present, the Parties engaged in extensive legal discussion and correspondence, which included numerous and lengthy discussions and written communications.  (*Id*. at ¶ 20.)  Between August 24, 2023 and September 25, 2023, the Parties engaged in extensive settlement negotiations. (*Id*. at ¶ 22.)   On September 25, 2023, the Parties

reached an agreement to settle the Action on the terms set forth in the Agreement attached as Exhibit A.  (*Id.*).

The Parties reached the proposed settlement in this matter after extensive research, legal debates, discussions, and correspondence, and after good faith bargaining.  (*Id*. at ¶ 23.)

### C. The Agreement Terms

If approved by the Court, the Agreement will cover Representative Plaintiff and all of the Eligible Settlement Participants ("Settlement Class Members" or "Settlement Class") who elect to participate in the Agreement by signing and returning Consent and Release Forms.  The Settlement Class consists of 1,307 total individuals who are listed in Appendix 1 to the Agreement.

The Total Eligible Settlement Amount is Four Hundred Six Thousand Five Hundred Sixty-Two Dollars and Thirty-Six Cents ($406,562.36), which sum will cover separate payments as follows: (a) all of the Individual Payments to the Settlement Class Members; (b) Representative Plaintiff's Representative Payment; and (c) Class Counsel's attorneys' fees and expenses.

The Settlement Class Members will be eligible to receive up to Two Hundred Sixty-Four Thousand Five Hundred Thirty Dollars and Thirty-Eight Cents ($264,530.38), which will be divided into Individual Payments to the Settlement Class Members.  The Individual Payments are calculated proportionally on each Class Member's alleged overtime damages during the Calculation Period.  The Individual Payments have been calculated by Class Counsel and are in Appendix 1 to the Parties Agreement.  Any Individual Payments to Eligible Settlement Participants who do not execute and return Consent and Release Forms will be retained by Defendants.

Three Thousand Dollars ($3,000.00) will be paid to Representative Plaintiff Lawrence Carmona, in addition to his Individual Payment, for his service as the Representative Plaintiff and for executing a general release of claims.  In addition, one-third ($135,520.78) will be paid to Class Counsel as a separate payment for attorneys' fees and $3,511.20 will be paid for expenses incurred

in prosecuting these claims, including $3,109.2 in out-of-pocket costs associated with administering the Notices to Class Members.

In exchange, the Action will be dismissed, and the Settlement Class Members will release Defendants from all federal and state wage-and-hour claims, rights, demands, liabilities and causes of action that were asserted in or could have been asserted in Plaintiff's Complaint, including but not limited to claims for unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees, and expenses, pursuant to the FLSA and the OMFWSA, for the Released Period.

To inform Eligible Settlement Participants of the Settlement, the Parties have submitted, as Exhibit B, the proposed Notice of Settlement of Lawsuit ("Notice"), with an attached Consent and Release Form.  The Notice will be mailed to the Eligible Settlement Participants at their last known home addresses according to records maintained by Defendants.  The Eligible Settlement Participants who sign and return Consent Forms will participate in the Settlement and their claims will be released.

## III.  THE PROPRIETY OF APPROVAL

The proposed Agreement is subject to approval by the Court pursuant to § 216(b) of the FLSA.  As shown in the attached Declaration of Class Counsel Chastity L. Christy, and as explained below, Court approval is warranted on all scores.

### A.  The Seven-Factor Standard Is Satisfied

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 16(b) "after scrutinizing the settlement for fairness."  *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine

5

whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946)).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at *3. As shown below and in the Christy, Declaration (*see* Exhibit D), the standard supports approval of the Settlement.

### 1)  No Indicia of Fraud or Collusion Exists

The Parties' counsel each have extensive experience litigating claims under the FLSA, including claims for unpaid hours worked. The Agreement was achieved only after arms-length and good faith negotiations between the Parties, with the assistance of a qualified and well respected counsel. As such, there is no indicia of fraud or collusion.

### 2)  The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval

The policy favoring the settlement of class actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. While the Parties agreed that the two-year statute of limitations

applied under Ohio law, they disagreed whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applied under the FLSA. (Ex. D, ¶ 47.)  Defendants claim that even if Plaintiff could succeed on the merits, Plaintiff cannot prove a willful violation of the law, and thus, no wages would be owed for the third year of the three-year limitations period.  (*Id*.)  In addition, the Parties disagree as to whether Plaintiff could recover liquidated damages under the FLSA.  (*Id*.)  Defendants believe they acted in good faith in paying their employees, including the Settlement Class Members.

If forced to litigate this case further, the Parties would certainly engage in complex, costly and protracted wrangling.  (*Id*. at ¶ 48.)  The Parties would be required to engage in extensive briefing regarding: (1) whether notice would be issued to similarly situated individuals; (2) whether Defendants' actions were willful; (3) whether Defendants have a good faith defense that would preclude liquidated damages; (4) Rule 23 Class Certification; and (5) summary judgment. (*Id*.)  Discovery would be expensive and time consuming given the continued factual and legal disputes between the Parties and the potential for up to 1,307 class members in the litigation.  (*Id.*) Moreover, the Parties would likely dispute the scope of first phase discovery relating to whether a class of similarly situated employees exist for purposes of administering court-ordered notice.  (*Id.* at ¶ 49.)  The Agreement, on the other hand, provides substantial relief to Representative Plaintiff and the Eligible Settlement Participants promptly and efficiently, and amplifies the benefits of that relief through the economies of collective resolution.

### 3)     Investigation Was Sufficient to Allow the Parties to Act Intelligently

The Parties engaged in substantial investigation prior to negotiating the Agreement. Relevant information was exchanged including a complete analysis of each Settlement Class Member's alleged overtime damages with respect to the claims alleged in the lawsuit.  (Ex. D, ¶¶ 16-26.)  Class Counsel obtained and reviewed detailed payroll records for the Settlement Class

Members, and the legal issues in the case were thoroughly researched by counsel for the Parties. (*Id.*)  All aspects of the dispute are well-understood, and were vehemently argued, by both sides. (*Id*. at ¶¶ 17, 18, 20.)

**4)**     **The Risks of Litigation Favor Approval**

"The likelihood of success . . . provides a gauge from which the benefits of the settlement must be measured." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984). Given the factual and legal complexity of this matter, it is difficult to assess Plaintiff's likelihood of success at trial.  Plaintiff's claims are based on disputed issues of fact and law and Plaintiff's success at trial is far from guaranteed.  In sum, although Plaintiff asserts that the class claims are meritorious, the action certainly is not without risk.  This factor thus weighs in favor of approval.

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result.  Moreover, in the present case, Defendants raise affirmative defenses to Plaintiff's claims, and the outcome of those defenses is uncertain as well.  Continued litigation would be risky for all and at each stage, including whether notice would be issued, summary judgment, and trial.

The number of individuals who could have received Notice of this lawsuit continued to dwindle by the day with the statute of limitations running.  (Ex. D at ¶ 50.)  There was no guarantee that this Honorable Court would have ordered that Notice be issued to individuals whom Plaintiff claims are similarly situated to him.  (*Id*.)   Plaintiff risked this Court not permitting the issuance of Notice, which would preclude Eligible Settlement Participants from being given the opportunity to opt-in to this litigation. (*Id*.)   Under the terms of the Settlement, 1,306 individuals who may not have been given an opportunity to participate in the lawsuit will be given an opportunity to participate in the Settlement.  (*Id*. at ¶ 51.)   Additionally, since there is no further and current tolling of the statute of limitations in this matter, the claims of all Eligible Settlement Participants

8

were diminishing daily, and some of them could have expired entirely before Notice was even issued. (*Id*.)  The Settlement permits individuals employed between July 25, 2020 and July 21, 2023 to participate in obtaining additional overtime compensation damages, and those employed between July 25, 2021 and July 21, 2023 to participate in obtaining liquidated damages. (*Id*.)  As such, the claims and damages of Eligible Settlement Participants are no longer at risk. (*Id*.)

Even if Plaintiff succeeded on the merits of his claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree.  Even if Plaintiff were to succeed on the merits, this Court or a jury could also find that Defendants did not act willfully, and thus a two (2) year statute of limitations would apply. (*Id.* at ¶ 53.)  The Settlement permits recovery of three (3) years for Plaintiff and Eligible Settlement Participants. (*Id*.)  Finally, a jury could find that Defendants acted in good faith, and thus no liquidated damages would not be awarded. (*Id.* at ¶ 54.)  The Settlement permits recovery of liquidated damages for two (2) years for Plaintiff and Eligible Settlement Participants. (*Id*.)  All of these scenarios would result in a monetary award of less than the amount obtained through this settlement. (*Id*.)  In fact, since there was no guarantee of the class receiving notice, of the three (3) year statute of limitations being applied, and of Plaintiff and Eligible Settlement Participants receiving liquidated damages, continued litigation could have served only to increase the attorneys' fees and expenses in this matter, without any guarantee of a higher verdict for Class Members. (*Id.* at ¶ 55.)

### 5)    **Counsel and Class Representative Favor The Agreement**

Plaintiff's range of possible recovery is also open to dispute.  Even if Plaintiff succeeded on the merits of his claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree.

The endorsement of experienced class counsel "is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. Ford Motor Co.*, No. 07-CV-14845, 2008

WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008).  Here, Class Counsel believes the settlement is fair, reasonable, and adequate.  (*See* Ex. D.)  Class Counsel has extensive experience in wage-and-hour class and collective actions, has acted in good faith, and has vigorously represented their clients in negotiating the settlement.  (*Id.*)  Representative Plaintiff has been fully informed and involved in the settlement process and agrees to the Agreement.  (*Id.* at ¶ 40.)  *See Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 533 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

### 6)     The Reaction of Absent Class Members

The absence of any Settlement Class Member objections indicates that the Settlement Class supports the settlement.  *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *6 (S.D. Ohio Jan. 26, 2011); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498-99 (E.D. Mich. 2008) (small number of opt-out requests indicative of the adequacy of the settlement).  In the present case, there are no objections by class members.  However, each Settlement Class Member has the option of opting into this matter or not.  The Eligible Settlement Participants are not bound by the settlement unless they affirmatively opt-in and return the Consent and Release Form.  As such, any members who choose not to participate are free to do so without taking any action on their part.

### 7)     Settlement is in the Public Interest

"[T]he law generally favors and encourages the settlement of class actions."  *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981).  The settlement ends complex litigation that has been pending for over ten (10) months and provides substantial relief to Eligible Settlement Participants and avoids protracted, costly litigation.  *See Brotherton*, 141 F. Supp. 2d at 905-06.  The terms of the settlement are equitable and provide a reasonable resolution of the action.  As detailed below, the Settlement will provide adequate payments to the Settlement Class Members

for unpaid overtime compensation and liquidated damages for a three (3) year time period. Pursuant to the Settlement, Settlement Class Members will collectively receive over 125% of their overtime compensation for the three (3) year period, or almost 195% of their overtime compensation for the two (2) year period, *after* the deduction of attorneys' fees and costs and a service award, *after* the deduction of attorneys' fees and costs and a service award. (*Id*. at ¶ 34.) Continued litigation would serve to increase the attorneys' fees and costs, with no guarantee of a larger verdict in favor of them. (*Id*. at ¶ 55.) In fact, since Notice has yet to go out, the claims of the 1,306 Eligible Settlement Participants were dwindling by the day as there was no tolling of the statute of limitations for their claims moving forward. (*Id*.) Thus, if the Parties did not stipulate to Notice, at the very least another six (6) months of litigation would ensue with discovery and briefing as to whether there are similarly situated individuals to whom notice should be sent. (*Id*. at ¶ 51.) The Settlement, however, permits those 1,306 Eligible Settlement Participants to receive compensation during the period of time between July 25, 2020 and July 21, 2023. (*Id*.) If the Parties hadn't settled the case, the claims and/or damages of the 1,306 Eligible Settlement Participants would have dwindled away before they even received Notice of the lawsuit. (*Id.* at ¶ 52.) Additionally, rulings by this Court or a verdict by a jury could result in less of recovery for Settlement Class Members if this Court or a jury were to rule in favor of Defendants on certain disputed issues of fact and law. (*Id*. at ¶¶ 53-55.) The Settlement is in the public interest as it permits 1,306 additional individuals to be given the opportunity to collect additional overtime compensation and liquidated damages without further litigation, while also preventing their claims and/or damages from dwindling daily. (*Id.* at ¶ 52.)

     **B.**     **The Settlement Distributions Are Fair, Reasonable and Adequate**

     As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-*

*Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999). All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for Representative Plaintiff and the Eligible Settlement Participants.

As shown above, the seven-factor standard supports approval of the Settlement. The parties' counsel have extensive experience litigating FLSA claims and there is no fraud or collusion. (See Exhibit D.) The expense and likely duration of continued litigation favor approval, in that wage-and-hour cases for groups of employees are always expensive and time-consuming. While no formal discovery has yet commenced, the Parties have engaged in substantial investigation and informal discovery prior to and during the negotiations, and the issues are well understood by both sides. (*Id.* at ¶¶ 17-25.) The outcome is uncertain for the Settlement Class Members, and the risks of continued litigation are evident for both sides. The opinions of experienced counsel of the parties support the Settlement, as does the Representative Plaintiff. (Ex. D.) All Individual Payments will be calculated proportionally on each Settlement Class Member's alleged overtime damages during the Calculation Period.

During the Calculation Period, Settlement Class Members were allegedly denied $211,267.11 in overtime compensation as a result of Defendants' failure to include all renumeration earned by them in their regular rates of pay for purposes of calculating their overtime compensation over a three (3) year period. (*Id*. at ¶ 33.) During the two (2) year period, Settlement Class Members were allegedly denied $135,759.53. (*Id.*)

If approved by the Court, the Settlement will provide adequate payments to the Class Settlement Members for unpaid overtime compensation for a three (3) year time period, and liquidated damages for a two (2) year period of time. (*Id.* at ¶ 34.) Pursuant to the Settlement, Class Members will receive over 125% of their overtime compensation for the three (3) year

period, or almost 195% of their overtime compensation for the two (2) year period, ***after*** the deduction of attorneys' fees and costs and a service award.  (*Id.*)  For purposes of the settlement, the Parties stipulated that for the period of time between July 25, 2020 and July 24, 2021 (the third year), the amount of each Settlement Class Member's Individual Payment will be determined based solely on their overtime wage calculations.  (*Id.* at ¶ 35.)  For the period of time between July 25, 2021 and July 21, 2023 (two year statute of limitations), the amount of each Settlement Class Member's Individual Payments will be determined based on their overtime wage and liquidated damages calculations.  (*Id.*)  As such, the total Settlement covers 100% of the Settlement Class Members' overtime compensation for three (3) years, in addition to 100% of the Settlement Class Members' liquidated damages for two (2) years, plus attorneys' fees and costs.

The Parties reached agreement by resolving *bona fide* disputes.  Accordingly, the settlement proceeds are fair, reasonable and adequate.

### C.     The Requested Service Award Should Be Approved.

The Settlement contemplates providing a $3,000 Service Award to Representative Plaintiff Lawrence Carmona.  Service awards to a representative plaintiff recognizing the value of his or her services on behalf of other participants are proper.  As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when

named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)). *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

In the present case, Class Counsel Chastity Christy's Declaration (*see* Exhibit D) establishes that the proposed Service Award is proper and reasonable. (*Id*. at ¶ 40.) Representative Plaintiff's services were extensive and effective. (*Id*.) He provided extensive factual information to Class Counsel and faithfully engaged in numerous and extensive calls, meetings, and other communications with Class Counsel over the course of the past year. (*Id*.) He was prepared to attend and participate in the mediation that was scheduled for September 14, 2023, which would have resulted in him missing work. (*Id*.) Moreover, he subjected himself to the responsibilities of serving as a named Plaintiff in a lawsuit against his former employer. (*Id*.)

The requested payment is proportional to service payments awarded to plaintiffs in other FLSA actions. *See Grayer, et al. v. Kennametal Inc.,* N.D. Ohio Case No. 1:16-cv-01382 (Boyko, C, Nov. 27, 2019)(awarding $20,000 to each representative plaintiff in total settlement of $1,812,500.00); *Whitlock v. Sevier Cnty., Tennessee*, No. 3:18-CV-233, 2020 WL 12894415, at *2 (E.D. Tenn. Dec. 21, 2020)($20,000 service payment in $900,000 settlement); *Johnson v. Midwest Logistics Sys., Ltd.,* 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (awarding $12,500 service award in $452,380.00 settlement); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *7 (S.D.

14

Ohio July 11, 2014) (awarding $10,000 service payments to each class representative); *Myres v. Hopebridge, LLC*, No. 2:20-CV-5390, 2023 WL 2399056, at *3 (S.D. Ohio Feb. 21, 2023)($7,500.00 in service awards to each representative plaintiff in $300,000 settlement); *O'Bryant v. ABC Phones of N. Carolina, Inc*., No. 2:19-CV-02378, 2020 WL 4493157, at *3 (W.D. Tenn. Aug. 4, 2020)($10,000 service awards given to each representative plaintiff in $1,715,888 settlement); *Salinas v. U.S. Xpress Enterprises, Inc*., No. 1:13-CV-245, 2018 WL 1475610, at *1 (E.D. Tenn. Mar. 26, 2018)($10,000 service award in $2,200,000 settlement); *Koszyk v. Country Fin.*, 2016 WL 5109196, at *6-7 (N.D. Ill. Sept. 16, 2016) (approving $10,000 service payments for each of seven plaintiffs in $2,825,000 settlement.)

D.   **Class Counsel's Fees and Expenses Are Proper and Reasonable**

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."  29 U.S.C. § 216(b).  Pursuant to the Settlement, Class Counsel's fees and costs will be made as a separate payment under the settlement terms.

The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b).  In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).

There are two methods for determining whether a fee is reasonable: the lodestar method

15

and the percentage-of-the-fund method. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App' 496, 498 (6th Cir. 2011).

In Ohio, the preferred method is to award a reasonable percentage of the fund. *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, 2017 WL 5247538, at *5 (S.D. Ohio Nov. 13, 2017) (quotations and citation omitted). The Court in *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) noted:

> An award of 33% of the total settlement fund is well within the range of fees requested in class and collective actions in Ohio federal district courts. *See, e.g., Johnson*, 2013 WL 2295880, at *6 (awarding attorney fees and expenses to class counsel in an amount of 33% of the settlement funds in class action case); *Kritzer*, 2012 WL 1945144, at *9–10 (awarding attorney's fees and costs up to $235,000 out of a settlement of $455,000 (52% of total recovery) in a hybrid FLSA collective and Ohio class action for unpaid overtime)).

In the instant action, Plaintiff requests that the Court award fees in the amount of one-third of the Total Eligible Settlement Amount. "In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund." *Carr v. Bob Evans Farms, Inc.*, No. 1:17-CV-1875, 2018 WL 7508650, at *4 (N.D. Ohio July 27, 2018); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (one-third of the fund "is a normal fee amount in a wage and hour case.")[3] The Ohio practice

---

[3] *See also Osman, et al. v. Grube, Inc., et al.* 2018 WL 2095172, at *5 (N.D. Ohio May 4, 2018) (awarding one-third of the fund); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 WL 2490989, at *3 (N.D. Ohio June 15, 2010); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *1 (N.D. Ohio Mar. 8, 2010) (approving one-third of fund where there was a recovery constituting one-third of claimed unpaid wages; litigation risks and significant work expended; and a contingency arrangement); *Kritzer v. Safelite Sols.*, LLC, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) (awarding 52 percent of maximum settlement fund to counsel in wage and hour case); *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *6 (S.D. Ohio July 11, 2014) (awarding 33 percent of $4 million settlement fund in wage and hour case); *Moore v. Aerotek, Inc.*, 2017 WL 2838148, at *6 (S.D. Ohio June 30, 2017), report and recommendation adopted, No. 2017 WL 3142403 (S.D. Ohio July 25, 2017) ("Fee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created.");

is in accord with the practice throughout the Sixth Circuit and nationwide.[4]

The Sixth Circuit considers the following factors in determining whether the requested fee is reasonable: (1) the value of the benefit rendered to the plaintiff and the class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent-fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Castillo*, 2015 WL 13021899, at *6 (Marbley, J.) (citing, among others, *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)). Each of these factors weighs strongly in favor of the reasonableness of the requested fee.

As stated extensively above, the risks to Plaintiff and Eligible Settlement Participants were significant. Instead of the risks of continued litigation, the total Settlement covers 100% of the Settlement Class Members' overtime compensation for three (3) years and 100% of the Settlement Class Members' liquidated damages for two (2) years, plus attorneys' fees and costs. (*Id*. at ¶ 31.)

---

*Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.,* No. 1:16-CV-448, 2017 WL 5247538, at *5-6 (S.D. Ohio Nov. 13, 2017) (awarding one-third of $450,000 fund).

[4] In *Bessey v. Packerland Plainwell, Inc.* 2007 WL 3173972 (W.D. Mich. 2007), the district court approved a one-third attorneys' fee in an FLSA settlement much like the one presented here. Fulfilling *Fegley*'s emphasis on "encourage[ing] the vindication of congressionally identified policies and rights," the *Bessey* court found "the percentage of fund method is the proper method in this case for compensating plaintiffs' counsel. The fact that the damages which could have been claimed by each class member were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible." *Bessey*, 2007 WL 3173972, at *4 (citing *Rawlings v. Prudential Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (the district court "must make sure that [class] counsel is fairly compensated for the amount of work done as well as for the results achieved" and "the percentage of the fund method more accurately reflects the results achieved"). *Accord, In re Revco Securities Litigation*, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993) ("'[t]he percentage of the fund approach… provides a fair and equitable means of determining attorney's fees'" because "'the size of a common fund is an objective yardstick by which the benefit conferred upon the class can be measured'").

The attorneys' fees requested are reasonable in light of the benefit achieved for Plaintiff and the Eligible Settlement Participants.

In determining the reasonableness of a fee award, the *Bessey* court considered the comparative data about class settlements summarized in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000), *discussed in Bessey*, 2007 WL 3173972, at *4:

> The most complete analysis of fee awards in class actions conducted to date was conducted by the National Economic Research Associates, an economics consulting firm.  The data is reported at Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (NERA, June 1995) (hereinafter "NERA Study").

*Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12) (emphasis added).

The NERA Study relied upon in *Shaw* and *Bessey* showed the average result achieved for class members was only 7% to 11% of claimed damages.  Measured against that standard, the settlement in the present Settlement is exceptional.  The allocation to the Eligible Class Members represents over 125% of their overtime compensation for the three (3) year period or almost 195% of their overtime compensation for the two (2) year period, ***after*** the deduction of attorneys' fees and costs and a service award.  (Ex. D, ¶ 34.)

There is no doubt that "society certainly has an interest in incentivizing attorneys to assist in combatting illegal nonpayment of wages." *Castillo*, 2015 WL 13021899, at *6 (Marbley, J.) (citing *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994)). Class Counsel took on this matter to represent Plaintiff and Eligible Settlement Participants in their overtime compensation claims against Defendants and litigated for ten (10) months against experienced Counsel. This factor supports awarding the requested fees to encourage qualified attorneys to represent employees in claims for unpaid wages.

Class Counsel undertook the representation on a purely contingent-fee basis.  (Ex. D, ¶ 44.)

Thus, Class Counsel has borne all of the risk that accompanies contingent-fee representation, including the prospect – very real in this case – that the investment of substantial attorney time and resources would be lost. *Id.* Class Counsel should be compensated for this risk. *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 796 (N.D. Ohio 2010); *see also Crosby v. Bowarter Inc. Ret. Plan*, 262 F. Supp. 2d 804, 814 (W.D. Mich. 2003) ("contingency serves to justify the higher fee"). "There is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases." *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011).

Had this case not settled, Class Counsel would have vigorously litigated the case without any promise of success and compensation. (Ex. D at ¶ 45.) At every step of the litigation, Defendants could have succeeded. (*Id.*) Therefore, Plaintiff and the 1,306 Eligible Settlement Participants were at great risk for non-payment. (*Id.*) This risk of non-payment strongly supports the amount requested here.

"Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart*, 2014 WL 3447947, at *7 (citation omitted). The parties faced complex motion practice on collective treatment, preclusion issues, dismissal of claims, and summary judgment.

As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121.

Class Counsel's Declaration contains information that demonstrates the reasonableness of the proposed fees and expenses. (*See* Exhibit D.) Class Counsel has worked diligently in

representing Representative Plaintiff and Eligible Settlement Participants with respect to the claims and settlement of this matter. Prior to filing the Lawsuit, Class Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific Complaint for the Court and Defendants.  (Ex. D at ¶¶ 17-26.) Class Counsel reviewed and analyzed time and pay records for Plaintiff and 3,597 individuals who could have potentially been class members. (*Id.* at ¶ 17.)  In performing those calculations, it was determined that 1,307 individuals were owed overtime compensation with respect to the claims asserted by Plaintiff in his Complaint. (*Id.*)

The litigation expenses sought to be reimbursed are also proper and reasonable.  Expenses incurred to date and which will be incurred with administering the Notice to Eligible Settlement Participants are $3,511.20, which includes the $402.00 filing fee and $3,109.20 in the out-of-pocket costs associated with administering the Notices to the 1,306 Eligible Settlement Participants. (*Id.* at ¶ 42.)  All expenses were incurred during the course of the litigation and settlement of this Action. (*Id.*)

## IV.    CONCLUSION

For the reasons addressed above, the Parties respectfully request that this Court approve the Agreement by entering the proposed Order of Dismissal and Approving Settlement attached as Exhibit C.

Respectfully submitted,

<table>
<tr>
<td>/s/ <em>Chastity L. Christy</em></td>
<td>/s/ <em>Katherine S. Decker</em></td>
</tr>
<tr>
<td>Chastity L. Christy (0076977)</td>
<td>Katherine S. Decker</td>
</tr>
<tr>
<td>Anthony J. Lazzaro (0077962)</td>
<td>Scot A. Hinshaw</td>
</tr>
<tr>
<td>The Lazzaro Law Firm, LLC</td>
<td>Shumaker, Loop & Kendrick, LLP</td>
</tr>
<tr>
<td>The Heritage Bldg., Suite 250</td>
<td>1000 Jackson Street</td>
</tr>
<tr>
<td>34555 Chagrin Boulevard</td>
<td>Toledo, Ohio 43604-5573</td>
</tr>
<tr>
<td>Moreland Hills, Ohio 44022</td>
<td>Phone:  419-241-9000</td>
</tr>
<tr>
<td>Phone: 216-696-5000</td>
<td>Facsimile:  419-241-6894</td>
</tr>
<tr>
<td>Facsimile: 216-696-7005</td>
<td>kdecker@shumaker.com</td>
</tr>
</table>

anthony@lazzarolawfirm.com
chastity@lazzarolawfirm.com

Attorneys for Plaintiff

shinshaw@shumaker.com

Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 25, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.


 /s/ Chastity L. Christy
One of the Attorneys for Plaintiff